MilligaN, J.,
delivered the opinion of the court:
This case rests alone upon the second count in the claimant’s petition. It was once before heard in this court, and the petition dismissed on a rule of practice then in force, but since abrogated. The claimant appealed, and the judgment, dismissing the petition was reversed, and the cause remanded for re-hearing. (7 C. Cls. R. p., 262.)
The claim made in this count of the petition is for the value of the barge William E. Hunt, which, as shown in the facts herewith filed, was lost while in the service of the United States, under a charter-party.
The charter-party provides, among other things, that the war-risk shall be borne by the United States, and the marine-risk by the owners, &c.
The barge had no propelling power of her own, and soon after the execution of her charter-party she left A quia Creek, under military orders, in charge of the steam-tug Atlantic, bound for Baltimore. She had on board a cargo of hay, and on her way down she encountered a severe storm, which drove her into Cornfield Harbor, just inside of Point Lookout, on the Potomac Eiver, where the tug left her at anchor, and removed a short distance for its own safety.
In the night the storm increased in violence, broke the barge from her moorings, and drifted her across the bay to Smith’s *186 Point, on the Virginia shore, where, at daylight the next morning, she was discovered by a party of rebels, captured, stripped, and burned.
Between the facts of this case and those found in the case of the schooner Mannahasset, (3 C. Cls. R., p. 76,) there is a striking similarity, and the same point that arose in that case is again presented for decision in this.
The Mannahasset, while discharging her cargo to the blockading fleet off Sabine Pass, was driven in a gale within a mile and a half of the shore. Her anchor there held her safe from the perils of the sea.' At daylight she found herself landlocked, with the wind ashore, and unable to beat off. At 7 a. m. she was fired on by the rebel batteries on the shore, and a shot cut away her cable, and she drifted in, was boarded, and destroyed.
Under this state of facts we held the act of the enemy was the proximate cause of her loss, and under her charter-party, which was similar to the one now before us, the defendants liable.
There is no material distinction between the two cases. The William B. Hunt, like the Mannahasset, when she was captured and destroyed, had passed the perils of the sea, and her destruction was doubtlessly due to the action of the enemy.
It is true that the perils of the sea drove her into the place where she encountered the peril that destroyed her; but at the time of her loss she was safe from the former, and was actually destroyed by the latter. The maxim In lege non remota •causa sed próxima speotatur applies here, and in our opinion makes the perils of the sea the remote, and the perils of the war the proximate, cause of her loss.
The Government, being the insurer, under the charter-party, against all such risks, is liable for the value of the vessel at the time of her loss, which we find to be $5,000; and judgment will be entered accordingly.
Nott, J., did not sit in this case, and took no part in the decision.